308 A.2d 347.

EMIL CARSETTI *et al. vs.* FRANCIS A. HOWARD, *Warden.*

AUGUST 2, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

ROBERTS, C. J. This matter is before us on an appeal from the denial of a petition for a writ of error coram

nobis. It appears that on May 23, 1969, a serious fire occurred at the Adult Correctional Institutions and that the petitioners, Raymond Wilbur and Emil Carsetti, along with Gennaro D'Amico, were subsequently indicted for statutory burning. After trial in Superior Court they were found guilty, and each of the three defendants prosecuted a bill of exceptions to this court. Subsequently, however, only Wilbur and Carsetti submitted briefs, and after oral argument their exceptions were overruled. *See State* v. *Carsetti*, 111 R. I. 642, 306 A.2d 166.

After the trial Gennaro D'Amico submitted affidavits exonerating Wilbur and Carsetti from any participation in the setting of the fire, asserting that he and one of the state's witnesses, Domingo L. Baptiste, actually started the fire. Gerard W. Bessette, who also testified for the state at trial, stated in an affidavit executed in prison in California that he had lied at the trial when he implicated Wilbur and that, furthermore, Baptiste and D'Amico in fact set the fire. In the light of these developments, Wilbur and Carsetti on October 29, 1971, addressed a petition to the justice of the Superior Court who had presided over their trial, praying for the issuance of a writ of error coram nobis.

The state argued that the writ of coram nobis does not lie to set aside a verdict based on perjured testimony. We cannot agree. Historically, the purpose of the common-law writ was to set aside a final judgment by the court in which it was rendered after the term had expired for errors of fact not attributable to the defendant's negligence and which, if known to the court, would have precluded entry of the judgment. We have recognized the availability of the common-law writ in this state. In *Andrews* v. *Langlois*, 96 R. I. 461, 194 A.2d 674 (1963), this court noted that such a petition is not directed to the correction of errors of law apparent on the record. Rather, it seeks the recall

of a judgment for an error of fact outside the record, "* * * the existence of which through no fault of the petitioner was unknown to him at the time of the trial and which if made known to the court would have prevented the rendition of the judgment." *Id.* at 463, 194 A.2d at 675. *See also State* v. *Plante,* 109 R. I. 371, 374 n. 2, 285 A.2d 395, 396-97 n. 2 (1972).

In our opinion, it is clear from the purpose of the writ that a judgment obtained by perjured testimony would not have been entered had the court been aware of the perjury. In such circumstances there is an obvious probability of a miscarriage of justice unless the writ is granted. It is our further opinion that the ultimate purpose of the writ is to have the judgment declared void and vacated and that a new trial be held on the issue of the guilt or the innocence of the petitioner. *People* v. *Hinton,* 132 Ill. App.2d 409, 270 N.E.2d 93 (1971); *Anderson* v. *Buchanan,* 292 Ky. 810, 168 S.W.2d 48 (1943).

The thrust of the hearing on the petition for the writ is not to retry the original cause but to determine whether or not the judgment would have been entered had some existing fact or facts been known to petitioner and the court. The writ is not granted as of right but in the discretion of the court, and, as the trial justice correctly noted, it is issued only where it has been established with reasonable certainty that the recantation of perjury by one of the witnesses was genuine and made in good faith. *Anderson* v. *Buchanan, supra.*

In the initial phase of the hearing on the petition, the trial justice refused to consider the affidavits submitted by D'Amico. It appears that on petitioners' motions for a new trial after conviction he had reviewed these affidavits and found them lacking in credibility. His refusal to reassess his prior conclusion in the light of the affidavit filed by Bessette was based on what he described as an anomal-

ous situation, stating that D'Amico, after his conviction, had prosecuted a bill of exceptions to this court but now, on the other hand, admits his guilt in the affidavits. The trial justice then, apparently rejecting the affidavits entirely, stated that if D'Amico would withdraw his bill of exceptions and plead guilty to the indictment, he would allow him to testify in support of the petition of Wilbur and Carsetti.

The trial justice further commented that he could not on the basis of Bessette's affidavit alone conclude that Bessette's trial testimony in fact was perjured. Stating that he wanted to observe Bessette on the witness stand as he testified on the matter, he continued the petition until the Attorney General could arrange to have Bessette brought to Rhode Island. Subsequently, Bessette was brought from California and appeared in the Superior Court, there asserting that the affidavit was true and had been voluntarily given. However, he refused to testify to that effect under oath on the ground that his answers might tend to incriminate him. Attorneys for petitioners had requested the Attorney General to give Bessette immunity in the circumstances. This request was denied, and Bessette was returned to California without testifying. Thereafter, the trial justice denied and dismissed the petition for a writ of error coram nobis, concluding that it had not been established with reasonable certainty that Bessette had perjured himself at the trial or that his repudiation of his testimony was genuine and made in good faith.

The petitioners urge that the trial justice abused his discretion in that he refused to consider or properly evaluate the information contained in the affidavits of D'Amico and of Bessette. In essence, their argument appears to be that were the affidavits standing alone, the trial justice might well have been justified in rejecting either of them

as being without reliability. However, they contend that if both affidavits are read together, they tend to sustain each other's credibility. First of all, D'Amico was confined at the Adult Correctional Institutions in Rhode Island, while Bessette was in prison in California and there is nothing in the record to indicate that they had in any manner communicated with one another after the trial. Moreover, both men in their affidavits completely exonerate Wilbur and Carsetti and indicate that the stories involving them with the setting of the fire were totally fabricated. In addition, both implicate Domingo Baptiste as having been one of those involved in starting the fire. In short, petitioners argue that the similarity of the affidavits of the two men, who apparently were acting independently of each other in making such affidavits, supports the truthfulness of Bessette's story and lends credence to the fact that the repudiation of his trial testimony is genuine and in good faith.

We are constrained to hold that the action of the trial justice in refusing to evaluate the affidavits given by D'Amico in the circumstances that existed after Bessette had conceded in his affidavit that he had perjured himself at the trial constitutes an abuse of discretion. There is no question, in our opinion, that the instant petition for the writ presented the D'Amico affidavits in an entirely new context. We attach substantial significance to the consistency of the affidavits of D'Amico and Bessette as to what transpired at the Adult Correctional Institutions and as to who, in fact, ignited the fires.

Obviously, there is nothing in the record that even suggests that D'Amico and Bessette could in any manner have been in collusion in preparing their affidavits. Both brought in as one of the perpetrators of the crime a prior prosecution witness, Baptiste. In our opinion, these factors are indicia of reliability that compel us to hold that

it has been shown with reasonable certainty that Bessette committed perjury at the trial and support a reasonable inference that his present recantation of his trial testimony is genuine and made in good faith.

The petition for the writ of error coram nobis is granted as to each defendant; the judgment of conviction in each case is declared void and vacated, and each case is remitted to the Superior Court with direction that the petitioners be given a new trial under Indictment No. 69-512.

Mr. Justice Kelleher dissents.

Mr. Justice Joslin did not participate.

*William F. Reilly*, Public Defender, *Moses Kando*, Asst. Public Defender, *Leo T. Connors*, for petitioners.

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, *Edward E. Dillon, Jr.*, Special Asst. Attorney General, for respondent.